United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 4, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-11403
_____

KEVIN A. MOORE,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE, INC.

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
No. 3:023-CV-1399-L
_____

Before JONES, BARKSDALE and PRADO, Circuit Judges.

PER CURIAM:[*]

This is a pro se appeal from the district court's grant of summary judgment to defendant United Parcel Service, Inc. ("UPS") on plaintiff Kevin Moore's claims for discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. Because no genuine issues of material fact exist with respect to Moore's claims, we **AFFIRM** the district court's grant of summary judgment.

## I.   BACKGROUND

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Moore joined UPS as a part-time worker in April 2000. He was a member of the Local 767 union, and the terms of his employment were governed under a collective bargaining agreement between UPS and the union. Under the agreement, employees may be discharged for absenteeism after they have been given one initial written warning. Also under the agreement, at the employer's discretion, employees may be issued more than one written warning in order to correct performance or attendance problems. R. at 204, 213.

Moore started his employment at UPS as a pre-loader, but began training as a driver in April 2001. Due to repeated performance failures, as well as an accident, however, Moore was disqualified from driving on May 12, 2001. In addition to his poor performance as a driver, Moore was absent or tardy more than eighty times during his last ten months of employment. Moore received his first warning letter for his poor attendance after failing to report to work on May 29, 2001.

On June 1, 2001, Moore filed a grievance contesting his disqualification as a driver. As a result of the grievance, a settlement was reached between the union and UPS in which UPS agreed to give Moore another opportunity at a driver position when an opening became available. On July 11, 2001, after being late or absent four times in the previous two weeks, UPS issued Moore a

2

second warning letter for poor attendance. An intent to suspend notification accompanied the second warning letter.[1]

Between July 25, 2001 and August 31, 2001, Moore was late or absent eight more times. On September 7, 2001, UPS issued Moore an intent to terminate notification.[2] In response, on September 12, 2001, Moore filed a grievance challenging the second warning letter, the intent to suspend notification, and the intent to terminate notification. Following a hearing between the union and UPS on September 26, 2001, Moore agreed to withdraw his grievance and serve a suspension for his attendance infractions. In exchange, UPS withdrew its intent to terminate.

Just two days later, on September 28, 2001, Moore once again reported late to work. In response, UPS issued Moore another intent to terminate notification. On October 10, 2001, Moore reported late to work once again. On October 19, 2001, UPS notified Moore that his employment was being terminated for poor attendance. In response to the notification, Moore instead decided to sign a separation notice, which voluntarily terminated his employment.

---

[1] This action initiated the grievance procedure for suspension required under the collective bargaining agreement, but did not immediately remove Moore from his job.

[2] This action initiated the grievance procedure for termination required under the collective bargaining agreement, but did not immediately remove Moore from his job.

Notwithstanding the fact that he quit, Moore sued UPS for Title VII violations.  On appeal, we have construed his arguments generously.

## II.  STANDARD OF REVIEW

We review the district court's summary judgment de novo. Freeman v. Tex. Dep't. of Crim. Justice, 369 F.3d 854 (5th Cir. 2004).  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case."  Freeman, 369 F.3d at 860 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e). The nonmoving party, however, "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  Freeman, 369 F.3d at 860 (citations omitted).

## III.  DISCUSSION

Moore challenges the district court's summary judgment rulings on his claims.

4

## A. Discrimination

Moore argues that he provided direct evidence of discriminatory remarks made by his immediate supervisors as required under Title VII. 42 U.S.C. § 2000e-2(a). Workplace remarks are considered sufficient evidence of discrimination if they are 1) related to the protected class of persons of which the plaintiff is a member, 2) proximate in time to the complained-of adverse employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue. Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000) (citation omitted).

Moore fails to establish the second, third, and fourth elements of the test. The racial epithets were allegedly made between April 2000 and April 2001, and therefore were not proximate in time to Moore's termination in October 2001. Additionally, the alleged epithets were made by individuals at UPS who did not have authority over Moore's termination. Further, there is no evidence in the record that establishes that the remarks were related to the decision to terminate Moore. Finally, it is undisputed that Moore never complained of or reported any of the alleged remarks to either his union or another manager. "Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat

5

summary judgment." Scales v. Slater, 181 F.3d 703, 712 (5th Cir. 1999).

Because Moore failed to provide direct evidence of discrimination, he must create a presumption of intentional discrimination by establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973). To establish a prima facie case of race discrimination in an employment termination case, Moore must prove that he "(1) is a member of a protected class; (2) was qualified for h[is] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." Okeye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001) (citations and internal quotation marks omitted).

Moore has failed to provide evidence to show that others similarly situated were treated more favorably. UPS records indicate that Moore was late or absent from work more than eighty-five times during the last ten months of his employment. UPS submitted evidence that it terminated Moore for poor attendance.

In an effort to satisfy the fourth element of the test, Moore argues that two white employees were not disciplined for poor attendance. The documents Moore provided to the district court, however, were not authenticated or identified as UPS business records pursuant to FED. R. EVID. 803(6), and were not accompanied

6

by any explanatory information to aid the court in understanding the statistical information contained in the documents. Therefore, the district court correctly concluded that the evidence did not support Moore's claim. Since Moore did not provide the district court with any additional evidence, he has not raised a genuine issue of material fact that others similarly situated were treated more favorably and cannot establish a prima facie case. The district court correctly concluded that UPS was entitled to summary judgment on Moore's claim that he was terminated because of his race.

## B. Hostile Work Environment

Moore argues that he established the elements of a prima facie case for a racially hostile work environment under Title VII. To establish a prima facie case, Moore must prove that

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)(citations omitted). "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (citations and internal quotation marks omitted). To determine

7

whether a hostile work environment existed, a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citations omitted).

Moore argues that several supervisors made a few racial comments that created a hostile environment. Moore, however, admitted that he never complained to UPS's human resource department or another supervisor about the comments. Moore failed to provide evidence to establish that the few isolated comments were so severe or pervasive that they affected a term, condition, or privilege of employment, or unreasonably interfered with his work performance. Moore also argued that the discipline he received for being tardy or absent was further evidence of a hostile work environment. As noted earlier, however, Moore, failed to establish that the discipline was racially motivated. Consequently, Moore failed to provide evidence sufficient to create a material issue that his workplace was an abusive or hostile working environment.

## C. Retaliation

Moore finally contends that he established the elements of a prima facie case of retaliation. This claim requires proof that: (1) he engaged in a protected activity, (2) he experienced an adverse employment action following the activity, and (3) there

was a causal link between the protected activity and the adverse employment action. <u>Montemayor v. City of San Antonio</u>, 276 F.3d 687, 692 (5th Cir. 2001). Under Title VII, an employee has engaged in protected activity if he has "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Moore argues that he was retaliated against for filing a grievance on June 1, 2001 for his disqualification as a driver. Moore, however, was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII. Rather, Moore simply complained that UPS had violated its agreement with the union. Moore's grievance, which made no mention of race discrimination, stated that he was following his supervisor's instructions when he returned to the service center without delivering his assigned packages. As such, Moore was not engaged in a protected activity when he filed his grievance, and he cannot establish a prima facie case for retaliation. Therefore, the district court correctly granted summary judgment to UPS on Moore's retaliation claim.

## IV. CONCLUSION

9

For the reasons discussed above, we **AFFIRM** the district court's ruling of summary judgment.