# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 4, 2011

No. 11-10090
Summary Calendar

Lyle W. Cayce
Clerk

DANA L. DAVIS,

Plaintiff – Appellant

v.

DALLAS INDEPENDENT SCHOOL DISTRICT,

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-01475-M

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Dana Davis brings claims of discrimination, retaliation, and a violation of due process rights against her former employer, Defendant-Appellee Dallas Independent School District. She contends that Dallas Independent School District failed to promote her due to her race and gender, retaliated against her when she complained of discriminatory practices, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10090

deprived her of certain procedural protections. The district court granted Dallas Independent School District's summary judgment motion. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2005, Plaintiff-Appellant Dana L. Davis ("Davis"), an African-American female, was hired by Defendant-Appellee Dallas Independent School District ("DISD") as an investigator in the Human Resources Investigation Department ("HR Department"). At the time that she was hired, Davis was a sworn Texas Law Enforcement Master Certified Peace Officer, and held the rank of Sergeant.

In 2007, DISD created a new department called the Office of Professional Responsibilities Investigations Department (the "OPR Department") to investigate complex white collar fraud cases. Don Smith ("Smith") was hired as the Executive Director of the OPR Department, and was tasked with filling several new OPR Inspector positions. The OPR Inspector positions required, *inter alia*, twenty years of relevant experience in white collar crime investigations as well as a current or previously held top secret security clearance. Shortly after its creation, the OPR Department merged with the DISD HR Department. Davis, as an administrative investigator, met the minimum qualifications to be considered for a Level V Investigator position in the new OPR Department.[1] Davis accepted this new position. Smith informed Davis and other HR Department investigators that if they met OPR performance standards, he would recommend that they be promoted to a Level VI Senior Investigator position.

---

[1] The Level V Investigator position required only a bachelor's degree from an accredited university and three years of experience in criminal justice, investigations, accounting, or related fields.

No. 11-10090

Davis states that, soon after the merger between the two departments, she sought the highly ranked position of OPR Inspector.[2] Davis informed Smith of her interest in the position, but she claims that Smith discouraged her from applying. Davis alleges that she was repeatedly passed over for OPR Inspector positions in favor of white males. She also alleges that Smith lowered the OPR Inspector requirements on one occasion so that a friend of Smith's (Norman Epstein) could be hired.

In early 2008, Peter Nielsen (Davis's former boss) offered Davis the position of OPR Child Abuse Coordinator,[3] and Davis indicated her willingness to accept this new position if the pay was commensurate with the responsibilities. According to Davis, Nielsen requested that she take over the responsibilities of Child Abuse Coordinator while salary negotiations were ongoing. On March 31, 2008, newly assigned OPR supervisor George Santowski ("Santowski") informed Davis that the promotion would result only in a six or seven percent pay increase, which was much lower than what Davis believed the promotion to be worth; she had sought a twenty percent pay increase. Davis communicated her displeasure to Santowski, but did not make a final determination at that time.

On April 8, 2008, Davis submitted a letter to Santowski in which she formally declined the Child Abuse Coordinator position because the salary was not commensurate with the position's increased responsibilities. Santowski forwarded this letter to Smith. The next day, Santowski met with members of the OPR Department (including Davis) to discuss a significant backlog in child

---

[2] The parties dispute whether Davis actually applied for the OPR Inspector position. For the reasons discussed *infra*, we need not address this issue.

[3] The parties dispute whether the offered promotion was actually for a "Child Abuse Coordinator" position, or was instead for a promotion to "Level VI Senior Investigator." DISD claims that the "Child Abuse Coordinator" position is "fictitious," and was created solely by Davis. We need not address this factual dispute for purposes of this appeal.

abuse cases. In this meeting, Davis was assigned the task of distributing the child abuse cases to staff, and training OPR Inspectors on child abuse investigations. When the meeting concluded, Davis stayed behind and told Santowski that she objected to her newly assigned tasks because they were the responsibilities of the Child Abuse Coordinator, a position that she had declined. The discussion between Santowski and Davis grew heated, as the two disagreed as to whether the responsibilities that Davis had been assigned were within her job description. They agreed to address the issue further with Smith. After meeting with Smith, it was determined that Davis would not have to review and assign the child abuse cases.

On April 15, 2008, Davis met with Smith, Santowski, and Charlene Burroughs ("Burroughs"), the Ethics and Integrity Manager for the OPR Department, to discuss Davis's refusal to perform assigned tasks at the April 9 meeting. At the meeting, Smith handed Davis a memorandum that documented Davis's previous performance issues and her refusal to perform the task of assigning child abuse cases. This memorandum threatened disciplinary action or termination if Davis refused to complete assigned tasks, and outlined Davis's primary job responsibilities as a Level V OPR Investigator. Davis disputed several of the listed infractions and disagreed with Smith's overall performance assessment. Davis then demanded that she have legal counsel before the meeting proceeded further, and left the room.

Davis was recalled to Santowski's office, and Santowski continued the meeting without Smith's participation. Upon returning, Davis stated that she felt ill and could not continue with the meeting. Although Davis asked to use the restroom several times, Santowski refused, and stated that she would be considered insubordinate if she left the room. Santowski then kicked a garbage can towards Davis and told her that she could vomit in it if she felt ill. At this point, Davis accused Santowski of creating a "hostile work environment." When

No. 11-10090

Santowski continued to deny her requests to leave and seek medical treatment, Davis said, "Massa may I please leave the room, I am so very sick." Davis eventually left the meeting and proceeded to the restroom. Davis called her sister and requested that she pick her up from work. Although Santowski asked Davis to return to his office and sign certain papers before she left, Davis refused to do so. Santowski told Davis to report to Employee Relations on April 16, 2008. Meanwhile, Santowski informed Smith of Davis's conduct during the meeting.

Smith recommended that Davis be placed on "emergency removal," due to insubordination and unprofessional conduct. He also suggested that DISD conduct an internal investigation into her conduct during the meeting. After consultation with the DISD general counsel, Santowski wrote a letter to Shirley Boss (DISD Director of Employee Relations) dated April 18, 2008, in which he reported the general counsel's advice that DISD should issue a letter of non-renewal for Davis's probationary contract. Under this proposal, Davis's contract would expire on August 31, 2008, and she could simply "ride out" her contract until then. Consistent with these recommendations, DISD decided that the "best course of action would be to issue a letter of non-renewal for [Davis's] contract," a few days before her term was set to expire. According to DISD, this decision was based upon Davis's unprofessional conduct and insubordination. Meanwhile, Davis was placed on paid administrative leave. The investigation into her behavior at the April 2008 meeting continued, and Lieutenant Calvin Howard ultimately found that Davis violated multiple provisions of the DISD Police and Security Services General Orders & Code of Conduct.

With the assistance of counsel, Davis filed seven separate grievances with DISD, the first of which was dated May 15, 2008. Davis complained of racial- and gender-based discrimination in the first grievance. Davis's grievances were considered and ultimately denied by the DISD Board of Trustees. Davis claims that her performance evaluations, which had previously been at or above

5

No. 11-10090

average, were changed to below average after she complained of racial and gender discrimination, and that she did not receive previously awarded pay increases after her grievances were filed. DISD sent Davis a non-renewal letter on August 29, which Davis claims to have received on September 2, 2008.

After Davis exhausted her administrative remedies, she then filed suit in the district court. Davis alleges (1) racial and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and under 42 U.S.C. § 1983, (2) retaliation, (3) deprivation of liberty and property interests without due process, and (4) false imprisonment. DISD moved for summary judgment on all claims, and the district court granted summary judgment after a hearing. Davis timely appealed the district court's rulings with respect to her claims of (1) discrimination, (2) retaliation, and (3) deprivation of property without due process. We affirm.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo* and apply the same standard as the district court. *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836-37 (5th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010).

## III. DISCUSSION

### A. Discrimination Claim

Davis contends that DISD discriminated against her on the basis of her race and gender when it failed to promote her to an OPR Inspector position on

several different occasions. Title VII provides that, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). When there is no direct evidence of unlawful discrimination, we analyze a plaintiff's Title VII claims using the framework set out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in subsequent cases. Under *McDonnell Douglas*, the plaintiff must carry the initial burden of establishing a *prima facie* case of racial or gender discrimination. *Id.* at 802. When a plaintiff raises a failure to promote claim, the *prima facie* case requires four elements: "(1) that the employee is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). If a plaintiff establishes her *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the action. *See McDonnell Douglas*, 411 U.S. at 802. If the defendant carries this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "Although intermediate evidentiary burdens shift back and forth under th[e *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

No. 11-10090

A plaintiff may also assert claims of racial discrimination and retaliation against a government entity under 42 U.S.C. § 1981 and § 1983.[4] This court has explained, "Section 1983 and [T]itle VII are parallel causes of action. Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (citations and internal quotation marks omitted); *see also Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 n.3 (5th Cir. 1983). Suit must be brought under Section 1983, however, as Section 1981 does not itself provide for an independent cause of action. *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 463 (5th Cir. 2001) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)). Because a claim of racial discrimination under Section 1983 is "essentially the same" as such a claim brought under Title VII, our analysis with respect to Davis's discrimination and retaliation claims applies with equal force to both causes of action. *Lauderdale*, 512 F.3d at 166.

Davis argues that although she was not promoted to an OPR Inspector position, she was required to train incoming OPR Inspectors, who were mostly white males. As noted above, the OPR Inspector position required, *inter alia*, twenty years of law enforcement experience and a current or former top secret security clearance. At the summary judgment hearing, counsel for Davis conceded that Davis lacked the required security clearance. With this concession, the district court found that Davis was not qualified for the OPR Inspector position, and thus could not make out the *prima facie* case of race or sex discrimination.

---

[4] A sex discrimination claim, however, is not cognizable under Section 1981. Such a claim must instead be brought under Title VII. *See Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 344-45 (5th Cir. 1981) ("[S]ex discrimination is not cognizable under § 1981."); *see also Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 980 (5th Cir. 1986) (citing *Bobo*, 662 F.2d at 344-45).

No. 11-10090

On appeal, Davis contends that the twenty year experience and the security clearance requirements were "stipulation[s]" used to exclude her from promotional opportunities, and that the requirements were waived or reduced when white males were hired for OPR Inspector positions. Davis also objects to the fact that she was required to train incoming OPR Inspectors, but was not considered for a promotion herself. Finally, she argues that her responsibilities as a Level V Investigator were essentially the same as those of an OPR Inspector, but the OPR Inspectors made approximately $20,000 more annually.

Davis's arguments are unpersuasive. As the district court correctly recognized, a plaintiff must demonstrate that she is qualified for the position at issue to make out a *prima facie* failure to promote claim. *Davis*, 383 F.3d at 317. It is undisputed that Davis did not possess the required security clearance for the OPR Inspector position. As such, she cannot make out a *prima facie* failure to promote claim, and summary judgment on Davis's racial and gender discrimination claims was proper. *See, e.g.*, *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 316 (5th Cir. 2001) ("[S]ummary judgment is appropriate if the nonmovant fails to establish facts supporting an essential element of his *prima facie* claim.").

As DISD recognizes, it is possible to read Davis's allegations as asserting a claim of "disparate impact" rather than a "disparate treatment" discrimination, particularly with respect to her claim that the job requirements were artificially lowered for the benefit of white male applicants, such as Norman Epstein.[5] Even if we were to read Davis's complaint in this manner, her claim would still not succeed. Disparate impact claims involve "facially neutral employment policies that create such statistical disparities disadvantaging members of a protected group that they are 'functionally equivalent to intentional discrimination.'"

---

[5] DISD maintains that Epstein had over forty years of relevant experience as well as the required security clearance, and that the job requirements were not altered for his benefit.

*Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 987 (1988)). To establish a *prima facie* case of discrimination under a disparate impact theory, a plaintiff must show: "(1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275-76 (5th Cir. 2008). The Supreme Court has explained that "a prima facie case of disparate-impact liability [is] essentially, a threshold showing of a significant statistical disparity, and nothing more." *Ricci v. DeStefano*, __ U.S. __, 129 S.Ct. 2658, 2678 (2009) (citation omitted).

"Claims of disparate impact under Title VII must, of necessity, rely heavily on statistical proof." *Munoz*, 200 F.3d at 300 (citing *Watson*, 487 U.S. at 987); *see also Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) ("Ordinarily, a *prima facie* disparate impact case requires a showing of a substantial statistical disparity between protected and non-protected workers in regards to employment or promotion.") (internal quotation marks omitted). Generally, a plaintiff must produce "statistical evidence comparing the effects of a challenged policy on protected and unprotected groups of employees." *Stout*, 282 F.3d at 861. Davis has not done so here. She has not provided any evidence of racial- or gender-based statistical disparities in hiring for OPR Inspector positions, or anything more than unsupported anecdotal allegations that job requirements were altered to accommodate white male applicants. Davis has not established a *prima facie* disparate impact claim.

Davis has failed to state a *prima facie* case of racial or gender discrimination, and the district court did not err in dismissing these claims.

**B. Retaliation**

In her retaliation claim, Davis argues that DISD failed to renew her contract after she rejected the Child Abuse Coordinator position, and after she

accused Santowski of creating a "hostile work environment." A plaintiff may establish a *prima facie* case of retaliation by demonstrating that: "(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). "Summary judgment is appropriate if the plaintiff cannot support all three elements." *Id.* If, however, a "plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (internal quotation marks and citations omitted). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Dixon v. Moore Wallace, Inc.*, 236 F. App'x 936, 937 (5th Cir. 2007); *see* 42 U.S.C. § 2000e-3(a).

On summary judgment, the district court held that Davis did not engage in "protected activity" until May 15, 2008, when she filed a grievance stating that she was "a victim of unlawful race discrimination, gender discrimination, and retaliation." The court concluded that Davis could not establish causation because the decision not to renew her contract was made on April 18, 2008, well before Davis filed the May 15 grievance. The district court concluded that Davis's April 8 letter in which she rejected the Level VI Investigator (or Child Abuse Coordinator) position due to an insufficient pay increase and her "hostile work environment" complaint during the April 15 meeting with Santowski did not constitute protected activity for purposes of retaliation. On appeal, Davis

No. 11-10090

argues that the district court erred in concluding that she did not engage in protected activity when she asserted that she was in a "hostile work environment" on April 15. Davis further argues that the district court erred in granting summary judgment because adverse employment actions continued after May 15, 2008, as DISD did not conduct a formal investigation and ultimately terminated her on August 31, 2008.

We agree with the district court. Davis's statement during the April 15 meeting that Santowski created a "hostile work environment" does not itself constitute "protected activity" within the meaning of Title VII, as this complaint lacked a racial or gender basis. 42 U.S.C. § 2000e-3(a). We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity. *See, e.g.*, *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not protected activity."); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) ("Moore . . . was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII."); *see also Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 654 (E.D. Tex. 2007) ("Plaintiff has not shown that she engaged in a statutorily protected activity. Specifically, although Evans complained of a purportedly hostile work environment, at no time did she suggest that [the conduct at issue] was related to Evan's race, sex, . . . or other characteristic protected by Title VII."). The only racial component of the entire April 15 interaction was interjected by Davis herself, when she referred to Santowski as "Massa." Davis cannot rely upon her own use of a racially sensitive

12

word to demonstrate that her accusation had racial overtones. The district court properly concluded that Davis's complaint of a "hostile work environment" did not constitute protected activity.[6]

Based upon the determination that Davis's May 15, 2008 grievance was the first "protected activity" for Title VII purposes, the district court correctly held that Davis could not demonstrate causation between her "protected activity" and the "adverse employment action." As the district court recognized, the initial decision not to renew Davis's contract was made on April 18, 2008, before she filed the May 15 grievance. The mere fact that this decision was made prior to the conclusion of any formal investigation, or that it was finalized in the period after she filed her grievance, or that Davis was not notified of the decision until the end of her contract term, does not change the outcome. Davis relies upon *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999), in support of her argument that temporal proximity between protected activity and an adverse employment action may be sufficient to overcome summary judgment. In *Shackelford*, however, the plaintiff was terminated shortly after her protected activity. 190 F.3d at 408-09. Here, in contrast, the initial termination decision occurred *before* her protected activity. *Shackelford* is therefore inapposite. Because the protected activity occurred after the adverse employment action at issue, Davis cannot demonstrate causation.

Davis briefly contends that both her failure in June 2008 to receive a previously awarded raise and DISD's downgrade of her performance evaluations also constitute retaliation. Actions such as these may constitute "adverse

---

[6] Davis's April 8, 2008 decision to decline the Child Abuse Coordinator position due to insufficient pay also does not constitute "protected activity," as there is no racial- or gender-based component to her refusal. Rather, Davis explained, "[a]fter examining the job responsibilities of the OPR Child Abuse Coordinator against the responsibilities of my investigator V responsibilities, the increase in responsibility does not equate to the increase in salary."

employment actions," if they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). We recently questioned whether similar conduct might constitute "adverse employment actions" after *Burlington*, but did not decide the issue. *Murray v. La.-Div. of Admin. Office of Planning and Budget*, No. 11-30267, 2011 WL 3794759, at *1 n.2 (5th Cir. Aug. 26, 2011) ("Although it is clearly established that the denial of a promotion is an actionable adverse employment action, it is less clear whether a negative evaluation . . . or the denial of a bonus constitute actionable adverse employment actions [after *Burlington*].") (citation omitted). Davis has not briefed these issues, and these claims are therefore waived. *See, e.g.*, *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.2 (5th Cir. 2008) ("Arguments inadequately briefed on appeal are waived."). Even if we were to address the merits, and assume that Davis suffered "adverse employment actions," we would still find summary judgment proper, as Davis has presented no evidence of causation. Rather, she has simply relied on her own subjective beliefs that these actions were retaliatory. These allegations are not sufficient to overcome summary judgment.

The district court did not err in dismissing Davis's retaliation claim.

## C. Due Process

In her complaint, Davis claims that she had "a property interest in continuous employment with DISD," due to the "time period when [she] was notified of the non-renewal." She further claims that she did not receive notice of DISD's intent to terminate her, nor any "meaningful description of the evidence against her." She thus claims that her due process rights were violated.

It is well established that "[t]he threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest. Without such an interest, no right to due process accrues." *DePree v. Saunders*,

588 F.3d 282, 289 (5th Cir. 2009) (citations and internal quotation marks omitted). "The Constitution does not create property interests . . . and [a plaintiff must] therefore look to [state] law for the creation of a property interest that will support [her] claim to due process rights." *Garcia v. Reeves Cnty., Tex.*, 32 F.3d 200, 203 (5th Cir. 1994) (citation omitted); *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules . . . .").

On summary judgment, Davis clarified before the district court that she claimed a property interest in her job only until August 31, 2008. The district court first determined that Davis had no property interest either in continued employment after August 31 or in her police credentials. The court further determined that Davis was not in fact deprived of any property interest in her job that she possessed prior to August 31, 2008, because she was placed on paid administrative leave rather than terminated. On appeal, Davis now claims that she "never argued that she had . . . a property interest in continued employment" with DISD, and instead refers vaguely to a property interest in an "investigation," in her "police credentials," or in "extra job duties" that she could perform with her credentials. We find no merit in these arguments.

Like the district court, we conclude that Davis had no property interest in her contract after its August 31, 2008 expiration. *See Govant v. Houston Comm. Coll. Sys.*, 72 S.W.3d 69, 76 (Tex. App.–Houston [1st Dist.], 2002). Further, even if we assume that Davis had a property interest in her employment prior to the end of her contractual term, she was not deprived of that interest because she was placed on paid administrative leave after the April 15 incident, and was not terminated. Placement on paid administrative leave does not constitute deprivation of a property interest. *See Richards v. City of Weatherford*, 145 F.

Supp. 2d 786, 790-91 (N.D. Tex. 2001) ("[A] property interest does not arise from a public employee's suspension, reassignment, placement on leave, or the mere duties or responsibilities of a position of employment."); *see also Brokaw v. Dallas Indep. Sch. Dist.*, No. 3:07-CV-0015-O, 2008 WL 4191512, at *8 (N.D. Tex. Sept. 11, 2008) ("[A] person's placement on administrative leave does not amount to a deprivation of a protected property interest.").

We are also not persuaded by Davis's claimed property interest in an "investigation," in her police credentials, or in "extra job duties." First, we reject Davis's contention that she had a property interest in any particular type of "investigation." Davis cites no authority (and we are aware of none) to support the position that she has a property interest in a certain "investigation" or investigative procedure under Texas law. In fact, Texas courts have consistently concluded that procedural regulations (or an agency's failure to follow those procedures) do not themselves give rise to a property right. As one court has explained:

> A state agency's failure to follow its own procedural rules governing employment will not create a property interest which otherwise does not exist. An individual does not have a property interest in the rules themselves or in his or her state employer's observance of the rules. Rather, a property interest protected by procedural due process arises where an individual has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings.

*Alford v. City of Dallas*, 738 S.W.2d 312, 316 (Tex. App.–Dallas, 1987) (citations omitted); *see Cogdill v. Comal Indep. Sch. Dist.*, 630 F. Supp. 47, 49 (W.D. Tex. 1985) ("While the failure to comply with the state procedures may be the basis for a state law claim, it cannot suffice to create a property interest."); *see also Broughton v. Livingston Indep. Sch. Dist.*, No. 9:08-CV-175, 2010 WL 4453763, at *10 (E.D. Tex. Nov. 3, 2010) (holding that plaintiff "cannot establish a property interest in the [statutory procedures] of § 21.006 of the Texas Education

No. 11-10090

Code") (citing *Cogdill*, 630 F. Supp. at 49). An investigation is not a property interest itself, but more appropriately constitutes the "due process" that would be required before deprivation of an actual property interest.

We likewise reject Davis's claims of a property interest in police credentials or in "extra job duties." Neither allegation is properly pled in the complaint. Davis has also failed to adequately brief either claim on appeal, and we consider these arguments waived. *See, e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."). Even if we were to consider the merits, these arguments would fail. Davis's reference to "extra job duties" is far too vague for a proper due process analysis, and she has provided no authority to support the contention that an individual may have a property interest in police credentials under Texas law. In fact, the only authority of which we are aware supports the opposite conclusion. *See Robertson v. Neal*, No. 7:01-CV-017-R, 2001 WL 1516741, at *4 (N.D. Tex. Nov. 27, 2001) ("I find that in Texas a police officer does not have a cognizable 'property right' with respect to a police officer's license as to which the due process clauses of the Fifth and Fourteenth Amendments apply.").

As Davis was not deprived of any protectable property interest, the district court properly granted summary judgment on Davis's due process claim.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

17