**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 9, 2012

Lyle W. Cayce
Clerk

No. 11-30668

JAIVE T. STEWART,

Plaintiff-Appellant

v.

RSC EQUIPMENT RENTAL, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
2:09-CV-7247

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Jaive Stewart brought this Title VII suit against RSC Equipment Rental, Incorporated ("RSC"), his former employer, alleging race based improper discharge. The district court granted RSC's motion for summary judgment and dismissed Stewart's action. On appeal, Stewart seeks reinstatement of his retaliatory discharge claim. We AFFIRM.

BACKGROUND

Stewart was hired by RSC as an Inside Sales Representative. He worked briefly at the company's branch in LaPlace, Louisiana, then was transferred to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined this opinion should not be published and is not precedent except under the circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30668

another of RSC's branches located on the site of a plant operated by Shell Motiva in nearby Norco. He commenced work at RSC in May 2006 and was terminated on February 28, 2007. While at RSC, he was employed as a "counter-man" to take and process orders for industrial equipment rentals. On July 6, July 17, and September 29, 2006, RSC issued Stewart written Performance Improvement Notices ("PINs") concerning his work and behavior.

Stewart, an African-American, claims that RSC fired him in retaliation for his complaints about racial discrimination by co-workers and a supervisor. RSC counters that it ended Stewart's employment on the basis of a written policy which provides that termination may occur if "[d]uring any 12-month period, [an employee] receive[s] a combination of three written warning notices for violating any rule(s)."

After his termination by RSC, Stewart filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC notified him on August 3, 2009 that it was unable to conclude that any statutory violation had occurred, but that he had the right to file a lawsuit. On November 10, 2009, Stewart brought suit under Title VII in the United States District Court for the Eastern District of Louisiana. On June 17, 2011, the district court granted RSC's summary judgment motion to dismiss Stewart's suit, and he appealed.

## DISCUSSION

In the absence of a genuine issue of material fact, summary judgment is appropriate. Fed. R. Civ. P. 56(a). Our review of a summary judgment is *de novo*, applying the same standard as the district court. *Lifecare Hosps., Inc. v. Health Plus, Inc.*, 418 F.3d 436, 439 (5th Cir. 2005). "Even if we do not agree

with the reasons given by the district court to support summary judgment, we may affirm . . . on any grounds supported by the record." *Id.*

Title VII forbids employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It contains a specific anti-retaliation provision, the purpose of which is to ensure that workers are not dissuaded "from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); 42 U.S.C. § 2000e-3(a).

To make a *prima facie* case of retaliation, an employee must establish that (1) he participated in an activity protected by Title VII, (2) his employer took an adverse employment action, and (3) there was a causal link between his protected activity and his employer's adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Evidence that the adverse employment action "was based in part on knowledge of the employee's protected activity" will satisfy the causal link element. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quotation marks and citation omitted).

If the employee meets this burden, his employer must proffer "a legitimate, non-discriminatory reason for the employment action." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). Then, if the employer provides such a reason, the burden shifts back to the employee to establish the existence of a triable issue of fact that the employer's reason is pretextual. *Medina*, 238 F.3d at 685. Although analytically almost "identical to the 'causal link' step in the *prima facie* case, the burden here is more stringent. The plaintiff must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Id.* (quotation marks and citation omitted).

No. 11-30668

Stewart identifies several acts on his part that he claims were protected activities under Title VII's "opposition clause," which makes it illegal "for an employer to discriminate against any employee[] . . . because he has opposed any practice made [] unlawful." 42 U.S.C. § 2000e-3(a); *Crawford v. Metro. Gov't. of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009).[1]

One of Stewart's retaliation claims arises from an unpleasant exchange with his supervisor, Daphne Leger. Stewart alleges that after that exchange, Leger observed him walking "toward the bathroom with his note pad in his hand." Later that day, Leger reprimanded Stewart for the way he had handled the unavailability of equipment. Stewart claims that "[w]hen she saw him take out his notebook for the second time," Leger complained about "his attitude" and said she would report him to General Manager William Shifter. These note-taking events allegedly occurred on February 26, 2007 – two days before his firing.

Stewart also claims that he engaged in protected conduct by softly singing these lyrics from a gospel song: "This old building keeps on leaning. I got to find me a better home." Stewart says that Leger "presumably heard this verse" after his work rotation was announced.

We conclude that neither Stewart's note-taking nor his song-singing were activities protected by Title VII. The song is indistinguishable from non-race based grumbling by an employee. The note-taking had no racial element, and no reasonable employer would have understood it to be an expression of

---

[1] Not at issue in this case is another kind of employer conduct that is protected by the "participation clause," viz., retaliation against an employee who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Crawford*, 555 U.S. at 274.

No. 11-30668

opposition to unlawful discrimination at work. *See Crawford*, 555 U.S. at 276. Thus, because Stewart cannot meet the first element of the *prima facie* case, summary judgment as to these allegations was proper. *Medina*, 238 F.3d at 684.

The more significant events occurred about six months earlier. Stewart claims that he twice complained to Leger about racial discrimination. The first time, in late June 2006, Stewart reported that Leger treated him less favorably than another Inside Sales Representative, a white employee named Chad Cheramie. Stewart also claims to have informed Leger that a white delivery driver for RSC, Brad Gomez, displayed "vulgarity and uncooperativeness" when Stewart gave him rental contracts. Stewart contrasts this with the way Gomez supposedly interacted with Cheramie. Stewart says that, at about the same time, he complained about receiving fewer training opportunities than Cheramie and having received comparatively greater disciplinary scrutiny. Stewart says that he asked Leger:

> Why is it that when Brad or Chad does something wrong they are never named, but when I do something wrong you tell me about [it] in front of customers and employees? And let me guess, it has nothing to do with the fact that Chad and Brad are white and I'm black.

Then, a few weeks later, Stewart complained to Leger that a co-worker's spitting into his lunch and certain computer problems were instances of discrimination. He asserts that he informed Leger of his plan to take these grievances to her superiors, Shifter and District Manager Mack Picard.

In his opposition to summary judgment, Stewart described the racial nature of these incidents by stating that he did not have the "complexion for protection," and that "one set of rules" applied to Gomez and Cheramie, and

another to him.  Although Stewart should have followed this court's guidance by making these arguments more specific and noting relevant portions of the record in his brief, *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 274 n.3 (5th Cir. 2009), waiver occurs only when "the nonmovant fails even to refer to it in the response to the motion for summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  As Stewart's filings were not that deficient,  we conclude that all arguments briefed by Stewart on appeal are properly before us.

Because the word "oppose" in Title VII is undefined, it is proper to use a dictionary definition, such as "to resist or antagonize; to contend against; to confront; resist; [or] withstand."  *Crawford*, 555 U.S. at 276.  Stewart's comments to Leger in June suffice as opposition to racial discrimination.  They were sarcastic but were clearly claims of racial discrimination.  We must, therefore, disagree with the district court's conclusion that these were not protected activities.  We also  reject RSC's suggestion that these complaints by Stewart did not reference conduct that could "plausibly be considered discriminatory." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007).

Nonetheless, summary judgment was proper as to Stewart's claim of protected conduct because he presented no evidence of a "causal link" between his termination in February and the events of the previous June and July. *Stewart*, 586 F.3d at 331.  We have recognized three indica of causation in the context of employment retaliation: (1) the absence of any reference to the conduct at issue in the employee's disciplinary record, (2) deviation from the employer's customary "policy and procedures in terminating the employee," and (3) temporal proximity between the termination and protected conduct.  *Nowlin*

No. 11-30668

*v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994). All three indicia weigh against Stewart.

First, Stewart's employment record does refer to instances of insubordination, unprofessional conduct, and a lack of diligence in the performance of his duties. RSC gave him three PINs: one for an altercation with a client company; another for failure to verify the availability of equipment before drawing-up rental contracts; and a third for neglecting to reserve rentals, resulting in missed deliveries.

Second, after the February 26 note-taking incident, Leger reported Stewart to Shifter. That complaint was forwarded up the chain of authority to Picard and ultimately to RSC's Regional Human Resources Manager. The report contained a synopsis of Stewart's three PINs and a termination recommendation. Stewart has not claimed that this process deviated from RSC's typical protocol. Thus, the second indicia of causation — deviation from employer policy — is not present.

Finally, the *prima facie* causal link might be established if the employer's Title VII-proscribed activity and the termination of the employee are "very close" in time. *Wasburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (quotation marks and citation omitted). First, the events of February 26 were temporally close to Stewart's firing on February 28, but those events did not involve protected activity. Conversely, in the absence of any other record evidence of retaliation, the period of seven months between Stewart's protected activities in June and July of the previous year and his firing in February is too long to serve as indicia of causal nexus. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

No. 11-30668

## CONCLUSION

"Employers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Stewart did not present evidence that would allow his race-based claims of retaliatory termination to survive summary judgment.

AFFIRMED.