# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 19, 2013

Lyle W. Cayce
Clerk

No. 12-11127
Summary Calendar

MARLON WATERS,

Plaintiff-Appellant

v.

CITY OF DALLAS, TEXAS,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
No. 3:11-CV-540

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Marlon Waters appeals the district court's grant of summary judgment in the City of Dallas's favor on his Title VII discrimination and retaliation claims. For the following reasons, we AFFIRM the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Marlon Waters, an African-American male, was employed as a lieutenant by the Dallas Police Department ("DPD"). On September 16, 2009, he was

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11127

transferred to the Southwest Patrol Division, after which he allegedly suffered a series of discriminatory and retaliatory acts on account of his race.

In particular, Waters alleges discrimination resulting from circumstances involving the NBA All-Star Game in February 2010.  DPD was charged with providing security and law enforcement during the event.  Deputy Chief Rick Watson was appointed division commander, and tasked with planning and executing security for the athletes' hotel stay. Because of budgetary constraints, DPD commanders like Watson were directed to minimize overtime expenditures.

Over the course of the NBA All-Star event, a snow storm hit Dallas. Waters, one of the designated watch commanders for the event, reacted by allowing his subordinates to report to work early.  As a result, Waters approved 3.5 hours of overtime for officers under his command.  Because Waters had not sought prior authorization for approving the overtime, Watson verbally reprimanded him and told him to leave his shift early so DPD could recoup the cost of the unauthorized overtime.  Consequently, Waters lost the opportunity to earn seven hours of overtime.

On March 31, 2010, Waters sent a letter to Assistant Chief Floyd Simpson complaining of the poor relationship between himself and Watson.  The letter listed several complaints, including Watson not returning one of Waters's emails, not taking meetings, reprimanding Waters for authorizing overtime, and interfering with his command decisions.  Watson and Simpson met with Waters on April 13, 2010, to discuss the March 31 letter.  The following day, Waters was transferred to the Lake West Storefront station ("Lake West").

Waters alleges that, from the time he was transferred to Lake West, Watson ceased communicating with him and cut him out of the chain of command by effectively replacing him with Waters's subordinate, Sergeant Sheldon Smith—another African American.  According to Waters, Watson and

2

No. 12-11127

Smith instructed all Lake West personnel not to contact Waters under any circumstance.

On September 28, 2010, Waters was transferred again—this time to the Communications Division ("Communications"). Waters was among 44 lieutenants who were ordered to new posts as part of a department-wide reassignment process. Following his transfer, Waters met with Assistant Chief Daniel Garcia and Deputy Chief Zachary Belton. During the meeting, Garcia informed Waters that of the 104 lieutenants chosen for assignments, Waters was chosen last. Garcia added that Waters was transferred to Communications as a last resort because he kept "getting into these little things," and that if he did not shape up he was out the door. As a result of these comments, Waters began to suffer from severe stress and anxiety. Instead of reporting for duty, Waters requested leave, and ultimately resigned.

Waters filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on October 27, 2010, and subsequently amended his charge on November 4. The EEOC issued a right-to-sue letter on December 21, and Waters thereafter brought suit against the City of Dallas ("City"), alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. The City moved for summary judgment, which the district court granted on November 1, 2012.

Waters timely appealed.

## II. STANDARD OF REVIEW

"Summary judgments are reviewed *de novo*." *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 787 (5th Cir. 2012). The district court's judgment should be affirmed "if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute [as] to any material fact and the movant is entitled to judgment as a matter of law." *United States ex rel.*

*Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011); *see also* Fed. R. Civ. P. 56(a).

## III. DISCUSSION

On appeal, Waters asserts that the City (1) discriminated against him by denying him the opportunity to earn seven hours of overtime; (2) discriminated and retaliated against him by transferring him to Lake West and, later, Communications; and (3) constructively discharged him as a result of its discriminatory and retaliatory conduct.

We analyze Waters's Title VII claims under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff first must set out a prima facie case of discrimination or retaliation; if the plaintiff sets out a prima facie case, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for its action; if the defendant provides such a reason, the plaintiff must prove that it is pretextual. *See id.* at 802–05; *Septimus v. Univ. of Hous.*, 399 F.3d 601, 607 (5th Cir. 2005).

To establish a prima facie case of discrimination, a plaintiff must show that he (1) was a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees outside of his protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). To establish a prima facie case of retaliation, a plaintiff must show that (1) he participated in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity. *Id.* at 556–57.

We consider each of Waters's discrimination and retaliation claims below.

## A.    Denial of Overtime

Waters asserts that the City's decision to reprimand him for authorizing 3.5 hours of overtime without prior approval was discriminatory.  The district court "[o]ut of an abundance of caution" addressed Waters's overtime discrimination claim on the merits, but also found that he had failed to exhaust his administrative remedies as to this claim.  "[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994).  As the City points out, Waters fails to rebut—or even address—the district court's exhaustion finding. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").  We may affirm a district court's grant of summary judgment for any reason supported by the record. *LLEH, Inc. v. Wichita County, Tex.*, 289 F.3d 358, 364 (5th Cir. 2002).  Accordingly, we hold that Waters effectively has abandoned his overtime discrimination claim.[1]

## B.    Discriminatory and Retaliatory Transfer

Waters argues that the City's decision to transfer him to Lake West and Communications was discriminatory.  He also contends the transfers were retaliatory.  We agree with the district court's dismissal of both sets of claims.

---

[1] Even were we to consider Waters's overtime discrimination claim, we would affirm the district court's decision because the only evidence that the City's conduct was race-based is that a Caucasian lieutenant authorized 50 hours of overtime and was not reprimanded. However, Waters does not dispute that the Caucasian lieutenant received permission prior to authorizing the overtime.  The fact that Waters ignored a superior's instruction, while the second lieutenant did not, is fatal to Waters's prima facie discrimination claim. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (employees "who are subjected to adverse employment action for dissimilar violations are not similarly situated"); *see also Arceneaux v. Metro. Life Ins. Co.*, 481 F. App'x 196, 198 (5th Cir. 2012) (per curiam) (unpublished) ("To demonstrate that other employees were given preferential treatment in similar situations, [plaintiff] must provide evidence that those employees engaged in misconduct under nearly identical circumstances.").

No. 12-11127

1.     Discriminatory Transfers

In the district court, Waters alleged that he was racially discriminated against when he was transferred to Lake West and then to Communications. The district court dismissed these claims after finding that Waters failed to establish a prima facie case of discrimination because neither transfer constituted an adverse employment action. The district court further found that even if Waters had shown a prima facie case, the City still would be entitled to summary judgment because it presented a legitimate, non-discriminatory reason for the transfers, and Waters presented no evidence of pretext.

In this court, Waters concedes that the City presented a legitimate, non-discriminatory reason for his transfer to Lake West—to allow Waters to work a day shift and give him the opportunity to tackle Lake West's unique challenges. Similarly, he does not dispute that the mass reassignment of lieutenants was a legitimate, non-discriminatory reason for the Communications transfer.[2]  He argues, however, that these reasons were pretextual because, as to the Lake West transfer, "[t]he evidence shows that Chief Watson (a Caucasian) had Waters transferred . . . in order to demean and harass him," and that the transfer "resulted in a *de facto* demotion."  Likewise, as to the Communications transfer, Waters asserts in a conclusory fashion that the transfer "was motivated by race discrimination as well as by a desire to punish and harass him."

Assuming *arguendo* that Waters has shown a prima facie case of discrimination, he nevertheless has failed to show that the City's reasons for

---

[2] However, Waters also argues that the City failed to offer legitimate, non-discriminatory reasons for its decisions to "shift Waters involuntarily to a less desirable shift" and "harass and threaten Waters upon his arrival [at Communications] in September 2010." Aside from failing to submit any evidence that he was threatened or harassed, or that the night shift to which he was transferred objectively was less desirable, Waters also did not raise this argument in district court in response to the City's reasons for his transfers, and thus has waived it. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 317 (5th Cir. 2002).

6

transferring him were pretextual. "To establish pretext, [a plaintiff] must show that [a defendant's] proffered explanation is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (internal quotation marks and citation omitted). Aside from his own subjective beliefs that the transfers were race-based, Waters submits no evidence of pretext. *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam) (subjective belief that employer's actions were based on race insufficient to create inference of discriminatory intent); *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) ("[A] plaintiff cannot merely rely on his subjective belief that discrimination has occurred [to show pretext] . . . ."). We further note that—aside from his subjective beliefs—he has presented no evidence that he was demeaned, harassed, or punished, or that the transfers constituted demotions. The district court thus correctly dismissed Waters's discriminatory transfer claims.

2.    Retaliatory Transfers

In addition to asserting that the Lake West and Communications transfers were discriminatory, Waters also claims that the City retaliated against him by transferring him in response to his March 31 letter. The district court reviewed the March 31 letter and concluded that the letter did not complain of racial discrimination. The district court held that Waters thus could not show that he engaged in a protected activity, and could not establish a prima facie retaliation claim. As with Waters's discrimination claims, the district court also determined that the Lake West and Communications transfers did not constitute adverse employment actions and that Waters had failed to show that the reasons for the transfers were pretextual.

In appealing the district court's decision, Waters again relies on the March 31 letter to establish a prima facie case of retaliation. In support, he points us to the following passage in the letter intended to show that he complained of

racial discrimination: "Shortly after I arrived I received numerous complaints from the African American supervisors regarding the Hispanic supervisors. I quickly discovered that the watch was polarized along racial lines. I sent Chief Watson an e-mail requesting a meeting regarding this distraction."

Having reviewed the March 31 letter, we are persuaded that the district court's interpretation was correct. Read in full, the March 31 letter —contrary to Waters's description—did not "oppose[] discrimination," but was exclusively concerned with the fact that for "reasons unbeknownst," Waters's "relationship with Chief Watson [had] gone from bad to worse." The language Waters quotes is relevant to the letter only in so far as Waters "wanted [Watson's] opinion and suggestions on how [Waters] might devise a strategy to resolve the issue." Waters received an email a short time later "stating that Chief Watson probably would not have time to meet with [Waters]." The letter in no way suggests that discrimination was occurring, much less that Waters was being discriminated against. "We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (unpublished); *see also Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 652 (5th Cir. 2012) (per curiam) (unpublished) (first element of prima facie retaliation claim not met where "no reasonable employer would have understood [the activity] to be an expression of opposition to unlawful discrimination at work").

Sending the March 31 letter was not a protected activity. Accordingly, Waters has failed to show a prima facie case of retaliation under Title VII. As with his discrimination claims, we further find that Waters failed to present evidence showing that the City's legitimate, non-discriminatory reasons for the Lake West and Communications transfers were pretextual.

No. 12-11127

## C.    Constructive Discharge

Finally, Waters contends that he was constructively discharged as a result of the City's discriminatory and retaliatory conduct.  Specifically, he asserts that he suffered severe stress and anxiety caused by other officers warning him that if he did not "shape up he was out the door."  Waters did not pursue a constructive discharge claim in district court and we refuse to consider such a claim now.  *See Lee v. Cytec Indus., Inc.*, 460 F.3d 673, 680 (5th Cir. 2006) (claims not raised before the district court are waived).

## IV.  CONCLUSION

For the aforementioned reasons, the district court's grant of summary judgment in the City's favor is AFFIRMED.