# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2011

No. 10-41331
Summary Calendar

Lyle W. Cayce
Clerk

SUE MANAWAY,

Plaintiff - Appellant

v.

THE MEDICAL CENTER OF SOUTHEAST TEXAS,

Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 1:09–CV–356

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Sue Manaway filed this lawsuit against The Medical Center of Southeast Texas, alleging that The Medical Center fired her because of her age and race, and in retaliation for complaints she made about discrimination at The Medical Center. Manaway appeals the magistrate judge's order granting The Medical Center's motion for summary judgment on all of Manaway's claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-41331

## I.  FACTUAL & PROCEDURAL BACKGROUND

Sue Manaway is a former employee of The Medical Center of Southeast Texas (the "Medical Center"). Prior to her termination, Manaway was employed in the Medical Center's telemetry unit. In June 2007, Manaway's schedule was changed so that she was no longer the "charge nurse" in telemetry, and the position began to rotate between several different nurses.[1] In October 2007, Manaway's supervisor, Shannon Smith, began to receive complaints about Manaway's work performance.

Smith stated that, as a result of these complaints, she removed Manaway from her charge nurse rotation for her shift on November 2, 2007, but did not give Manaway advance notice. Manaway called Smith's home to complain about her removal and abruptly hung up while speaking with Smith. That same day, Manaway notified the Medical Center's Alertline that she had been removed from her shift without advance notice. In a follow-up call to the Alertline, she stated that Smith had threatened to send the Ku Klux Klan to a co-worker's house and that white employees were paid at a higher rate than black employees.

On November 8, 2007, Manaway met with Smith, Jennifer Barroeta (the Medical Center's Director of Human Resources), and Heidi Wolf (the Medical Center's Chief Nursing Officer). At the meeting, Smith apologized for removing Manaway from her shift as charge nurse without notifying her first. But Manaway was told that her behavior in response to the shift change was unacceptable and was given performance counseling for hanging up abruptly on her supervisor in violation of the Medical Center's customer service policy.

On November 16, 2007, Manaway did not appear for her shift and was given a verbal warning for having six absences in a twelve-month period. On

---

[1] On appeal, Manaway does not argue that her removal from the position of charge nurse is the basis for her discrimination and retaliation claims.

2

No. 10-41331

January 10, 2008, the charge nurse requested Manaway to take a patient assignment but Manaway responded that she was too busy. Smith and another Medical Center employee met with Manaway on January 17, 2008, to address her refusal to take a patient assignment, and, although Manaway disputed that she had refused to take the assignment from the charge nurse, Manaway assured Smith that there would be no problems in the future.

On January 23, 2008, the charge nurse reassigned two patients from Manaway to another nurse, Tiffany Guillroy, and reassigned two patients from Guillroy to Manaway. Guillroy requested that Smith assign these patients to her because she had cared for them previously, and Smith instructed the charge nurse to make the change. Manaway allegedly refused to accept the reassignment, and no patients were reassigned. On January 28, 2008, Manaway met with Smith and Barroeta to address her refusal to accept the reassignment. Manaway abruptly left the meeting before it was finished, and she was sent a final warning about her conduct by mail.

On February 9, 2008, the charge nurse asked Manaway to perform an assessment on a new patient. Manaway allegedly refused to perform the assessment, and the charge nurse drafted a memorandum of the incident and sent it to the Medical Center's administration. As a result of Manaway's alleged conduct, Smith recommended that Manaway be terminated. On February 15, 2008, Manaway had a final meeting with Wolf, in which Manaway expressed several concerns she had with other employees' conduct in the telemetry unit. Among these concerns she expressed was that the other employees were "tattling" on her. After the meeting, Wolf drafted a memorandum outlining Manaway's conduct that warranted termination, which included her difficulty accepting her removal from the charge nurse position and her refusal to accept direction from other charge nurses. Wolf concluded that Manaway's termination would be appropriate, and discussed the issue with Baroetta. Baroetta and Russ

3

No. 10-41331

Folis (the Medical Center's Corporate Director of Human Resources) discussed Manaway's insubordination and lack of cooperation during her performance counseling, which included making unrelated complaints about other employees. Folis approved Manaway's termination.

After her termination, Manaway commenced this lawsuit against the Medical Center, alleging three bases for liability: (1) she was terminated on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 (the "Title VII claim"); (2) she was terminated on the basis of her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (the "ADEA claim"); and (3) she was terminated in retaliation for complaints she made about the Medical Center's discriminatory practices, in violation of Title VII and § 1981 (the "retaliation claim"). Manaway claimed her refusal to accept assignments and insubordination were "bogus," and that the real reasons for her termination were her race and age and the complaints she had made regarding racial discrimination at the Medical Center. The parties agreed to have the case proceed before a magistrate judge.

The Medical Center moved for summary judgment on all of Manaway's claims, stating that she had failed to make out a *prima facie* case of racial discrimination, age discrimination, or retaliation, and argued that the real reason for her termination was insubordination. The magistrate judge granted the Medical Center's motion for summary judgment on all of Manaway's claims, concluding that she had failed to make out a *prima facie* case on any of her claims. In the alternative, the magistrate judge concluded that Manaway had failed to allege a genuine dispute over whether the Medical Center's reason for her termination was pretextual. Manaway appealed.

No. 10-41331

## II.  STANDARD OF REVIEW

This court "review[s] the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party."  *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

## III.  DISCUSSION

### A.    Manaway's Title VII and ADEA Claims

Manaway's Title VII and ADEA claims are analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).[2]  *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (applying the *McDonnell Douglas* framework to an ADEA claim).  Under this framework, the plaintiff must first create a presumption of discrimination by making a *prima facie* case.  *Laxton*, 333 F.3d at 578.  This requires the plaintiff to prove that:  (1) "she is a member of a protected class"; (2) "she was qualified for her position"; (3) "she suffered an adverse employment action"; and (4) "others similarly situated were more favorably treated."  *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (regarding Title VII claims) (citation and internal quotation marks omitted); *see also Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (same regarding ADEA claims).

Once the plaintiff has made a *prima facie* case, the burden shifts to the employer to "produce a legitimate, non-discriminatory reason for her termination," which "causes the presumption of discrimination to dissipate."

---

[2] Manaway hints in her brief that there is direct evidence of Smith's age discrimination against her.  Manaway has not properly briefed this argument, and we do not consider it.  *See* Fed. R. App. P. 28(A)(9)(a); *see also United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) ("It is not enough to merely mention or allude to a legal theory."  (citation and internal quotation marks omitted)).

*Laxton*, 333 F.3d at 578 (citation omitted). The plaintiff may prove pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (citation and internal quotation marks omitted). With this framework in mind, we turn to Manaway's Title VII and ADEA claims.

There is no dispute in this case that Manaway has met the first three prongs of proving a *prima facie* case for her Title VII and ADEA claims. Manaway is a 58-year-old, African-American woman, she was qualified for her position, and she suffered an adverse employment action when she was terminated. There is a dispute, however, over whether Manaway has made a *prima facie* case of disparate treatment by stating that other Medical Center employees who refused assignments were not terminated. Because the burden for establishing a *prima facie* case is "very minimal," *see Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (citation and internal quotation marks omitted), and because we decide Manaway's Title VII and ADEA claims on the basis of pretext, we assume, without deciding, that Manaway has made a *prima facie* case of discrimination. *See Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001).

The Medical Center stated that Manaway was terminated because of her insubordination and refusal to carry out patient assignments, which satisfies its burden of providing a "legitimate, non-discriminatory" reason for Manaway's termination. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167–68 (5th Cir. 1999) ("The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee."). Manaway has failed to carry her burden of proving that there is a genuine dispute over whether the Medical Center's proffered reason is a pretext for race or age-based animus.

Manaway first argues that her termination was pretextual because she did not refuse patient assignments. However, the record undisputedly shows that Manaway was asked by supervisors to carry out patient assignments and that those assignments were not carried out. Manaway's "assertion of innocence alone does not create a factual issue as to the falsity of [the employer's] proffered reason for terminating [her]." *Jackson*, 602 F.3d at 379; *see also Evans*, 246 F.3d at 355 (stating that employee's claim cannot survive summary judgment "merely because she disagrees with [her employer's] characterization of her disciplinary history" (citation and internal quotation marks omitted)). Furthermore, Manaway does not dispute that she hung up on her supervisor in violation of the Medical Center's policy and left a counseling session before it was completed.

Manaway next argues that the Medical Center's reason for her termination was pretextual because similarly situated employees were not terminated for similar conduct. *See Laxton*, 333 F.3d at 578. Proof of disparate treatment requires her to "demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (citation, internal alteration, and internal quotation marks omitted). Manaway points to two other employees who allegedly engaged in similar conduct but were not terminated. Manaway claims that one white employee, Marva Roan, would routinely yell at co-workers and refused assignments. Manaway claims that another white employee, Debra Vanover, would read novels and work on crossword puzzles and also refused assignments. She claims that neither of these employees was reprimanded or fired for her conduct.

However, Manaway has provided no evidence, aside from her unsubstantiated assertion, to establish that Vanover or Roan refused assignments. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th

No. 10-41331

Cir. 2007) ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." (internal citation and quotation marks omitted)). Nor has she claimed that Smith and the Medical Center's administrators were, with the exception of Roan's yelling, aware of Vanover and Roan's conduct. *See Wallace*, 271 F.3d at 221 (stating that employees were not similarly situated, in part, because "no one in a supervisory capacity was aware" of the other employee's actions). Finally, she has not provided any evidence that Vanover or Roan had her track record of refusing counseling for misconduct and insubordination, which the Medical Center's employees testified as contributing to her termination. *See id.* ("[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment[.]"). Accordingly, Manaway has not created a genuine dispute over the Medical Center's disparate treatment of employees.

Finally, Manaway argues that several comments made by Smith prior to Manaway's termination create a genuine dispute over the reason for her termination.[3] First, Manaway claims that Smith threatened to send the Ku Klux Klan to an African-American co-worker's house. Assuming Smith actually made this statement, it was made one year prior to Manaway's termination and was not made in the context of Smith's decision to terminate Manaway. Therefore, it does not demonstrate that Manaway's termination was the result of racial discrimination. *See Jackson*, 602 F.3d at 380 (stating that a comment

---

[3] Because Manaway's evidence of pretext is weak or non-existent, we apply this court's "stray remarks" doctrine to Smith's alleged comments. *See, e.g., Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (applying the stray remarks doctrine where "the plaintiff has failed to produce substantial evidence of pretext"). Stray remarks are evidence of discrimination when they are (1) "related to the protected class of persons of which the plaintiff is a member"; (2) "proximate in time to the complained-of adverse employment decision"; (3) "made by an individual with authority over the employment decision at issue"; and (4) "related to the employment decision at issue." *Jackson*, 602 F.3d at 380 (citation and internal quotation marks omitted).

made one year before adverse employment action and unrelated to employment action does not establish a genuine issue of material fact regarding pretext).

Next, Manaway claims that Smith made two age-related comments that create a fact issue over whether Manaway's termination was motivated by age discrimination. Manaway alleges that, shortly before rotating the charge nurse position, Smith stated that she had heard that Manaway was retiring. Manaway also alleges that Smith stated, at a staff meeting, that "she want[ed] some younger people, new ideas, and she's just a person that like[s] new ideas." Smith explained that she made this comment because she enjoyed "hiring new nurses who come in with a fresh concept and a new idea." There is no evidence in the record from which to conclude that either of Smith's comments were made in connection with Smith's decision to recommend Manaway for termination. *See Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 344 (5th Cir. 2002) (stating that comments were "stray remarks," in part because they did not relate to the adverse employment action). Furthermore, Smith's comment about Manaway's retirement was made in June 2007, almost eight months before her termination, and Manaway cannot remember when Smith stated that she liked hiring younger employees with new ideas. Therefore, these comments do not satisfy Manaway's burden of proving a conflict in substantial evidence regarding the Medical Center's decision for her termination, and the magistrate judge properly granted summary judgment on Manaway's Title VII and ADEA claims. *See Wallace*, 271 F.3d at 222 ("Where comments are vague and remote in time they are insufficient to establish discrimination." (citation, internal alteration, and internal quotation marks omitted)).

## B.    Manaway's Retaliation Claim

A plaintiff may prove retaliation under Title VII by direct or circumstantial evidence. Direct evidence of retaliation "is evidence which, if believed, proves the fact of intentional retaliation without inference or

presumption." *Fieros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (citation, internal alteration, and internal quotation marks omitted), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003). In the absence of direct evidence of retaliation, the plaintiff must make a *prima facie* case of retaliation, which is governed by the *McDonnell Douglas* burden-shifting framework. *See id.*

1.    Direct Evidence of Retaliation

Manaway claims that the magistrate judge erred by requiring her to make a *prima facie* showing of retaliation under Title VII because she had direct evidence that she was fired in retaliation for her complaints. Manaway's direct evidence is a statement at the end of Wolf's termination memorandum:

> Sue has made several other allegations of discrimination over the past few months, all of which have been investigated either at the hospital level or the corporate level and were found to be unsubstantiated. Although every employee is highly valued to me and The Medical Center of Southeast Texas, it is becoming more evident that we may not be able to reach a resolution which is amicable to all of the parties involved. As such, I have decided to separate the employment relationship at this time. I will allow Sue to submit a resignation if she requests to do so.

If Wolf's memorandum discussed only Manaway's complaints, some of which undisputedly are protected by Title VII, 42 U.S.C. § 2000e-3(a), then this excerpt could be read as direct evidence that Wolf recommended Manaway's termination because of her "several other allegations of discrimination over the past few months." However, the memorandum is nearly three pages in length, and it details Manaway's repeated counseling regarding her insubordination, refusal to accept patient assignments, and inability to have a proper working relationship with Smith. Given the significance of this other content, the excerpt Manaway cites from Wolf's memo is not direct evidence of retaliation, and she must establish a *prima facie* case. *See Sandstad v. CB Richard Ellis, Inc.*, 309

No. 10-41331

F.3d 893, 898 (5th Cir. 2002) (stating that a remark was not direct evidence of age-based animus, in part because of the "ambiguity of the remark").

### 2.    Circumstantial Evidence of Retaliation

A *prima facie* case of retaliation requires the plaintiff to prove that: (1) "she participated in an activity protected by Title VII"; (2) "her employer took an adverse employment action against her"; and (3) "a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). Once the plaintiff makes a *prima facie* case of retaliation, the burden shifts to the employer to "provide a legitimate, non-retaliatory reason for the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, — F.3d —, 2011 WL 1796366, at *8 (5th Cir. May 12, 2011) (citation and internal quotation marks omitted). The burden then shifts back to the employee to "prove that the protected conduct was a 'but for' cause of the adverse employment decision."[4] *Id.* (citation and internal quotation marks omitted).

The parties do not dispute that Manaway met the first two prongs of a *prima facie* case of retaliation: she made complaints about pay disparity between white and black employees at the Medical Center, she reported an allegedly racist comment made by Smith to another employee, she claimed she was replaced by a white employee from her position as temporary charge nurse, and she was terminated. With respect to the third prong, Manaway argues that Wolf's memorandum establishes a causal link between her protected complaint and her termination.

---

[4] Manaway argues that she may also meet her burden by proving that retaliation was a "motivating factor" in the decision to terminate her. Because this argument has been raised for the first time in Manaway's reply brief, it has been waived. *See United States v. Brown*, 305 F.3d 304, 307 n.4 (5th Cir. 2002) (stating that "[t]his Court will not consider a claim raised for the first time in a reply brief"); *see also Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 595 (5th Cir. 2007) (treating mixed motive theory asserted for the first time on appeal as waived).

No. 10-41331

Assuming, without deciding, that Wolf's memorandum is sufficient to establish a causal link between Manaway's complaints and her termination, the magistrate judge's grant of summary judgment on this claim was still appropriate because Wolf's memorandum does not create a genuine dispute of material fact that, but for Manaway's complaints over conduct prohibited by Title VII, she would not have been terminated. *See Hernandez*, — F.3d —, 2011 WL 1796366, at *9. The temporal proximity between Manaway's complaints alone is not sufficient to create a genuine issue of material fact on the issue of retaliation. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). It is undisputed that, in at least two instances, Manaway's supervisors asked her to perform assignments, and that those assignments went unperformed. This led to a final warning from the Medical Center, after which the charge nurse reported that Manaway had refused another assignment. The record shows that this conduct, and Manaway's well-documented inability to work in a professional manner with Smith and other Medical Center staff, are what precipitated her termination. Therefore, we conclude that there is no genuine dispute on the issue of but-for causation, and the magistrate judge properly granted summary judgment on Manaway's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the magistrate judge is AFFIRMED.