**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 18, 2012

Lyle W. Cayce
Clerk

No. 11-31020
Summary Calendar

CLARENCE ARCENEAUX

Plaintiff-Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY

Defendant-Appellee.

Appeal from the United States District Court,
Western District of Louisiana, Lafayette-Opelousas
Division Court Case No. 6:10-CV-649

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Clarence Arceneaux appeals the district court's grant of summary judgment on his Title VII employment discrimination claim. Because nothing in the record shows that the reason given for his dismissal from MetLife was a pretext for discrimination, we AFFIRM.

I.

In 2003, Arceneaux retired from his job at Metlife as a financial services representative ("FSR"). However, he continued to work at MetLife by taking

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 11-31020

advantage of a program permitting some qualified FSRs to service old clients. As a condition of his contract with MetLife, Arceneaux agreed to abide by the company's policy requiring a professional work environment.

A few years after his retirement, in 2005 or 2006, Arceneaux overheard some of his co-workers use the "N word." Arceneaux complained to his supervisor. MetLife did not terminate the employees involved, but there were no further incidents.

Then, in early 2008, John Favaloro took over as Managing Director of Arceneaux's office. Shortly after taking over, Favaloro held several meetings to discuss MetLife's policy of workplace professionalism. MetLife required its employees to treat each other with dignity and respect. Arceneaux attended a meeting with Favaloro and received a one-page document summarizing MetLife's policies.

In June 2008, barely two months after Arceneaux's meeting with Favaloro, FSR Barbara Guidry called Arceneaux at his home. Guidry was hoping to help Arceneaux's son find a job at M.D. Anderson. In response, Arceneaux told Guidry, "don't you ever f—ing call my house." While the conversation itself did not extend beyond the confines of his home, Arceneaux did not keep it a secret. Instead, while at work, he reenacted the conversation in front of several co-workers. One shocked co-worker told him that he better apologize. Arceneaux did not do so.

In response to Arceneaux telling her to never "f—ing call my house," Guidry complained to Favaloro. Favaloro called in several employees to discuss the incident. One, Judith Romero, later submitted a written complaint detailing Arceneaux's workplace reenactment of his conversation with Guidry. Romero stated that Arceneaux's vulgarity demonstrated a complete lack of respect for the dignity of his co-workers, and risked that a nearby client could have overheard. Favaloro confirmed Romero's story with another FSR, Gerald Patin.

2

No. 11-31020

Ultimately, Favaloro determined that Arceneaux had acted unprofessionally. As such, he terminated Arceneaux for violating MetLife's policy of workplace professionalism.

Arceneaux filed a lawsuit alleging, among other things, that MetLife fired him because of his race. MetLife countered that Arceneaux had violated its policy of workplace professionalism. The district court agreed with MetLife and granted summary judgment.

## II.

Arceneaux argues that the district court erred in granting summary judgment in favor of MetLife. We review a district court's grant of summary judgment *de novo. Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987, 991-92 (5th Cir. 2005). Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Arceneaux asserts that MetLife fired him because of his race. To win his race discrimination claim, Arceneaux must prove that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) others similarly situated, but not in his protected class, were treated more favorably. *See McConnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Evidence establishing the prima facie case creates a presumption of discrimination. *Id.* at 804; *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 219-21 (5th Cir. 2001). To rebut this presumption, the employer must give a legitimate reason for acting as it did. 271 F.3d at 219-21. If the employer does, the plaintiff must produce sufficient evidence to show the employer's given reason was merely a pretext for discrimination. *Id.*

Here, MetLife claims that it fired Arceneaux because he acted unprofessionally by reenacting a conversation in which he told another

employee, "don't you ever f—ing call my house." Therefore, Arceneaux must produce evidence that this reason was merely a pretext for discrimination.

Arceneaux attempts to do so in two ways. First, he contends that the policy of professionalism applied only to his behavior in the workplace. Because the conversation with Guidry took place in his home, Arceneaux believes that MetLife's workplace policy could not have served as the basis of his termination. Second, Arceneaux claims MetLife did not terminate similarly situated white employees even after they engaged in equally unprofessional conduct.

Arceneaux cannot succeed on his first argument. Arceneaux may be correct that MetLife's policy did not apply to him at home. However, MetLife did not fire Arceneaux for his initial conversation with Guidry. Instead, MetLife fired Arceneaux for reenacting that conversation at work. As such, Arceneaux has no evidence that MetLife's policy did not apply to him.

Neither can Arceneaux succeed on his second argument. To demonstrate that other employees were given preferential treatment in similar situations, Arceneaux must provide evidence that those employees engaged in misconduct under nearly identical circumstances. *See, e.g., Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000).

Arceneaux has failed to do so. He asserts that MetLife did not fire the employees who used the "N word" in 2005. However, that incident took place several years prior to Arceneaux's own misconduct. Moreover, those employees served under a different supervisor. Unlike the 2005 employees, Arceneaux's misconduct took place barely two months after Favaloro's meetings discussing workplace professionalism. Given these significant differences, Arceneaux's position was not "nearly identical" to the 2005 employees. *See Wyvill*, 212 F.3d at 302 ("employees who had different supervisors than the plaintiff . . . or whose terminations were removed in time from the plaintiff's termination cannot be

probative of whether [race] was a determinative factor in the plaintiff's discharge").

Finally, Arceneaux alleges that MetLife never disciplined a white employee who used vulgarities on a regular basis. But, no evidence suggests that anyone ever reported that employee to his supervisor. In contrast, *several* employees reported Arceneaux to his supervisor. Because a supervisor must know about misconduct in order to punish it, an unreported incident is not "nearly identical" to a reported one. *See Manaway v. Med. Ctr. of Se. Tex.*, 430 Fed. Appx. 317, 322-23 (5th Cir. 2011) (unpublished). As such, Arceneaux has not produced evidence that MetLife treated similarly situated employees differently than him.

Arceneaux has no evidence that MetLife fired him because of his race. There is no genuine dispute as to any material fact regarding discrimination, and so the district court properly granted summary judgment.

AFFIRMED.