# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60643

ALICE BUCKHANAN,

United States Court of Appeals
Fifth Circuit

**FILED**

November 30, 2016

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

ERIC K. SHINSEKI, In his official Capacity as Secretary of the United
States Department of Veterans Affairs; VETERANS ADMINISTRATION
MEDICAL CENTER; JACKSON G. V. "SONNY" MONTGOMERY MEDICAL
CENTER; JOE BATTLE; CHARLES DONELSON; DOES 1 THROUGH 10,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CV-278

Before JOLLY, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Former police officer Alice Buckhanan appeals the district court's grant
of summary judgment in favor of the United States Department of Veterans
Affairs (the "VA") on her claims of retaliation and gender discrimination in
violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2, 2000e–3.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-60643

For the reasons that follow, we REVERSE and REMAND the district court's judgment as to retaliation, and AFFIRM the remainder of the judgment.

## I. Background

In 2002, Alice Buckhanan was hired by the VA as a basic law enforcement officer at the G.V. "Sonny" Montgomery VA Hospital in Jackson, Mississippi (the "Medical Center"). As a condition of her employment, Buckhanan was required to qualify twice a year with an approved firearm. Qualification required Buckhanan to hit forty of fifty rounds completely inside a standard target within certain time limits from various distances and shooting stances. Buckhanan first qualified in 2002, and remained qualified thereafter through 2010. In 2010, Buckhanan filed an Equal Employment Opportunity Commission ("EEOC") claim for race and gender discrimination.

In March 2011, Buckhanan sustained an on-the-job workplace knee injury and was temporarily assigned to alternate duty, performing clerical work. While on alternate duty, Buckhanan did not train with her firearm and was exempt from the firearm qualification requirement. But before Buckhanan could resume her normal duties, VA policy required that Buckhanan requalify with her firearm.

In May 2012, immediately after Buckhanan was cleared to resume her normal law enforcement officer duties, the VA directed Buckhanan to report to the firing range to attempt to requalify with her firearm without any retraining. Buckhanan shot poorly and abandoned her efforts to qualify after about twenty rounds. Buckhanan and two other officers who failed to qualify were then sent to the Law Enforcement Training Center in Little Rock, Arkansas, for firearms training. Buckhanan received two and a half days of classroom training on firearms and one and a half days at the practice range as part of her training. Despite this additional training, Buckhanan again failed to satisfy the firearm qualification requirement.

2

No. 15-60643

In July 2012, Buckhanan and the two other officers were placed on administrative leave and recommended for termination by acting Police Chief Yolanda Motley for "[f]ailure to maintain qualification in the use of agency approved firearms at an armed facility as a condition of employment." The VA subsequently sent Buckhanan a notice of proposed removal, and on August 16, 2012, Buckhanan met with and provided an oral response to the deciding official, Medical Center Director Joe Battle. Battle ultimately terminated Buckhanan in October 2012.

Buckhanan filed the present suit, alleging, inter alia, retaliation and gender discrimination.[1] After discovery, the VA filed a motion for summary judgment. In response to the VA's motion, Buckhanan submitted a document, "Exhibit J," which she claimed was a page from a policy manual that reflects the local standard operating procedures ("SOPs") for the Medical Center. According to Buckhanan, Exhibit J entitled her to a second retest before termination. Exhibit J states that officers who fail to qualify for the firearms requirement "will receive remedial training and be re-tested." It further states that "[s]hooters are permitted one re-fire during remedial training session(s), with training ammunition. If they fail, the shooter will be scheduled for a second and final remedial class." Buckhanan alleged that she was never provided a second and final remedial training class or a second opportunity to retest. Buckhanan further claimed that, during the August 16, 2012 meeting (the "August 16 meeting"), she requested another opportunity to retest but was told that she would only be allowed to retest if she agreed to waive her 2010 EEOC complaint that was still pending.

---

[1] Buckhanan also asserted claims for retaliation based on a workers' compensation action, race discrimination, age discrimination, breach of employment contract, breach of conditions of employment, hostile work environment, and negligent infliction of emotional distress. Buckhanan does not appeal the adverse judgment on any of these claims, so we do not address them.

No. 15-60643

With the exception of Buckhanan's retaliation claim, the district court initially granted summary judgment to the VA. On the issue of retaliation, the district court reserved its ruling to allow the VA to supplement its argument that the alleged offer to retest in exchange for Buckhanan's waiver of her pending EEOC complaint constituted an inadmissible settlement discussion under Federal Rule of Evidence 408. The district court clarified that Buckhanan could only carry her burden if both Exhibit J and the alleged offer to retest for dropping her EEOC complaint were competent summary judgment evidence. The VA filed a response to the district court's order and attached the affidavits of Battle, Captain Charlie Donelson of the VA Police Department, and Johnston Walker, a VA Staff Attorney. After reviewing the supplemental briefing, the district court ultimately determined that Buckhanan had failed to establish that Exhibit J was a policy at the Medical Center in 2012. As for the alleged discussion between Buckhanan and Battle regarding dropping her EEOC complaint in return for the opportunity to take a retest, the district court concluded that this discussion was part of settlement negotiations and was therefore inadmissible under Federal Rule of Evidence 408. Based on these determinations, the district court ultimately granted summary judgment in favor of the VA on all claims. Buckhanan timely appealed.

## II. Jurisdiction and Standard of Review

This court has jurisdiction over Buckhanan's appeal from a final judgment under 28 U.S.C. § 1291. A district court's ruling on a summary judgment motion is reviewed de novo. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is material if it has the potential to "affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). "When assessing whether a dispute as to any material fact exists, we consider all the evidence in the record but refrain from making credibility determinations or weighing the evidence; instead, we draw all reasonable inferences in favor of the nonmoving party." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362 (5th Cir. 2013) (citation omitted).

As to decisions by a district court to admit or exclude evidence, we review for an abuse of discretion. *MCI Commc'ns Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir. 2010) (citation omitted). "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010) (citation omitted).

### III. Discussion

Buckhanan argues that the district court erred in granting summary judgment in favor of the VA on her retaliation and gender discrimination claims. We address each claim in turn.

### A. Retaliation

In order to prevail at trial in a Title VII retaliation suit, Buckhanan would be required to demonstrate three elements: (1) that "she participated in a Title VII protected activity"; (2) that "she suffered an adverse employment action by her employer"; and (3) that "there [was] a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citation omitted). Thus, she must raise a genuine issue of material fact as to each such element to avoid summary judgment. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). The district court determined, and the parties do not dispute, that Buckhanan carried her burden as to the first and second elements when she demonstrated that she filed a charge of discrimination with the EEOC in

No. 15-60643

August 2010 and was terminated in November 2012. Buckhanan's appeal centers on the district court's determination that she failed to carry her burden to raise a material fact issue demonstrating the casual connection between her EEOC complaint and her termination. On that issue, the district court determined that Buckhanan failed to demonstrate both that she was entitled to a retest under applicable VA policy and that the VA denied her request to be retested unless she dismissed the EEOC complaint.

On appeal, Buckhanan argues that the district court improperly failed to consider two pieces of evidence that demonstrate the causal connection: (1) Exhibit J, which, according to Buckhanan, entitled her to a second retest, and (2) an alleged conversation with Medical Center Director Joe Battle at the August 16 meeting in which Battle offered to allow Buckhanan to retest in exchange for her dropping the 2010 EEOC complaint. We review the district court's decision on each piece of evidence in turn.

### 1. Exhibit J

The district court held that Buckhanan failed to establish, as a matter of law, that Exhibit J reflected the VA's policy on firearms testing at the time of her requalification test in 2012. In making this determination, the district court relied on Donelson's affidavit, concluding that it showed that Exhibit J was not the SOP in place at the Medical Center in 2012. [2] Based on this conclusion, the district court determined that Exhibit J was not competent summary judgment evidence that Buckhanan was entitled to receive additional training and be retested with her weapon.

---

[2] To the extent that the VA argues that Exhibit J is excludable as an unauthenticated document, Federal Rule of Evidence 901 allows a proponent to rely on testimony that an item is what it is claimed to be to demonstrate authenticity. FED. R. EVID. 901(a), (b)(1). Buckhanan provides this testimony in her affidavit, where she states that Exhibit J was part of the SOPs at the Medical Center.

No. 15-60643

When considering a motion for summary judgment, a district court must "refrain from making credibility determinations or weighing the evidence; instead, [it must] draw all reasonable inferences in favor of the nonmoving party." *Haire*, 719 F.3d at 362. A district court makes an improper credibility determination when it "weighs the evidence and resolves disputed issues in favor of the moving party" and chooses "which testimony to credit and which to discard." *Heinsohn*, 832 F.3d at 245 (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015)).

Here, the district court applied an erroneous evidentiary burden on Buckhanan at the summary judgment stage. Buckhanan was required to cite evidence in support of her claim that Exhibit J was part of the local VA's SOPs. *See* FED. R. CIV. P. 56(c)(1)(A). She fulfilled her burden by offering her affidavit, which states that she was given Exhibit J each year as part of her review of local VA SOPs. Donelson's affidavit simply presents a contrary position. The district court seized on Donaldson's statement that Exhibit J was not a part of the SOPs in 2012, as if the dispute was over 2012 versus a different year. But this statement is merely further explanation of Donaldson's main point, which was that Exhibit J was never part of the SOPs of the Medical Center. This main point directly contrasts Buckhanan's evidence that Exhibit J was part of the SOPs at the Medical Center. In other words, Donelson says that he never heard of Exhibit J (not that Exhibit J was the policy at some point before 2012 but then changed) while Buckhanan says Exhibit J was always "in the book." If the VA is now claiming that Buckhanan's evidence is unclear on the SOPs in 2012 (as opposed to earlier), it was required, in the district court, to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). The record lacks any evidence of an objection of this nature by the VA. We conclude that the evidence provided by Buckhanan and the VA

7

merely creates a dispute of fact over whether Exhibit J was part of the SOP of the VA.

By crediting Donelson's affidavit at the expense of Buckhanan, the district court made an improper credibility determination and weighed the evidence in favor of the movant. *Haire*, 719 F.3d at 362. Instead, all inferences should have been made in favor of the nonmovant, Buckhanan. *See Haire*, 719 F.3d at 362. The divergent views presented in the affidavits from Buckhanan and Donelson create a genuine dispute that should have been left to the finder of fact at trial. *See Heinsohn*, 832 F.3d at 245. Thus, the district court erred in determining that Exhibit J was not competent summary judgment evidence.

2. The August 16 Meeting

After determining that Exhibit J did not support Buckhanan's claim, the district court also determined that the VA's alleged offer to allow Buckhanan to retest qualified as a compromise offer or negotiation that was barred from admission under Federal Rule of Evidence 408. The district court found that the settlement negotiation began with the August 16 meeting between Buckhanan and Battle and concluded when Buckhanan rejected VA Counsel Johnson Walker's offer to allow a retest in exchange for Buckhanan's waiver of all pending and future claims.

As a threshold matter, we note that the district court was tasked with making the determination under Rule 104(a) whether the conversations between Buckhanan and Battle constituted a settlement negotiation under Rule 408. *See Hagan*, 641 F.3d at 116–17 (district court properly determined Rule 408 inapplicable where parties were not in dispute); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1354 (11th Cir. 2011) (determinations of underlying facts surrounding an alleged settlement discussion fall under Rule 104(a)). We conclude that the district court erred in not allowing Buckhanan to present evidence that Battle conditioned any retest on a waiver

of her EEOC complaint during the August 16 meeting. In characterizing the conversation as the start of a compromise offer or negotiation, the district court improperly lumped over two weeks of conversations between Buckhanan and the VA into one "negotiation" that fit under Rule 408. But a review of the evidence demonstrates only one conclusion: that the August 16 meeting between Buckhanan and Battle was a separate, distinct event which did not constitute a compromise offer or negotiation under Rule 408.

The distinction between Buckhanan's meeting with Battle and Buckhanan's later discussions with Walker turns on the nature of the discussion during the meeting. To determine whether a conversation falls under Rule 408, the court must determine "whether the statements or conduct were intended to be part of the negotiations toward compromise." *Hagan*, 641 F.3d at 117 (citation omitted). Here, the evidence clearly demonstrates that neither Buckhanan nor Battle intended their statements to be part of the negotiations towards compromise. Buckhanan describes her statements at the August 16 meeting as a request for the opportunity to retest based on her understanding of Exhibit J, not a compromise offer. Battle, in response, expressed the idea that the VA was willing to discuss a resolution and, according to Buckhanan, made clear that the resolution would include a condition that she waive her EEOC complaint. But Battle made clear that any settlement discussions would need to go through Walker. Finally, Battle stated that he did not take part in the settlement negotiations.

Neither Buckhanan nor Battle, then, thought they were engaged in settlement talks. This conclusion is further buttressed by the declaration of Walker, who states that he was not given authority to engage Buckhanan in settlement discussions on behalf of the VA until August 23, 2012. That is, if Battle told Buckhanan to contact Walker to discuss settlement on August 16, and Walker did not have authority to settle until August 23, Battle could not

9

have intended his statements to be part of any negotiation towards compromise. Contrary to the district court's characterization, the August 16 meeting was a separate discussion independent of the settlement offer made by Walker on August 23, 2012, and rejected by Buckhanan on August 27, 2012. As such, the August 16 meeting was not intended by either Buckhanan or Battle to be a compromise offer or negotiation. *See id.* The district court therefore abused its discretion by excluding Battle's statements that Buckhanan would be allowed to retest if she waived her EEOC complaint.[3]

Having determined that the district court erred in its assessment of Exhibit J and abused its discretion in excluding evidence of Battle's statements during the August 16 meeting with Buckhanan, we conclude that the grant of summary judgment on Buckhanan's retaliation claim was improper.

### B. Gender Discrimination

To make a prima facie case for gender discrimination, a Title VII plaintiff must show that she (1) "is a member of a protected class"; (2) "was qualified for the position"; (3) "was subject to an adverse employment action"; and (4) "was treated less favorably than other similarly situated employees outside of her class." *See Haire*, 719 F.3d at 363 (citation omitted). This district court found that Buckhanan failed to create a genuine issue of material fact that she was either qualified with her weapon in 2012 or that she was treated less favorably than other similarly situated officers outside of her class.

Even assuming that she was qualified, Buckhanan did not create a dispute of fact as to whether she was given any less favorable treatment than

---

[3] We also note that, based on our determination that the district court should have considered Exhibit J, the discussion between Buckhanan and Battle may have lacked valuable consideration if Buckhanan was already entitled to a second retest under Exhibit J.

the male officers identified in her briefs. [4]  Buckhanan specifically fails to demonstrate that she is similarly situated to the male officers.  Her evidence is deficient in two regards.  First, Buckhanan does not dispute that Claude Winn failed his firearms qualification in October 2014.  The more than two years that separates Buckhanan's failed qualification and Winn's failed qualification makes Winn's qualification too remote to consider Winn as a similarly situated employee.  *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated" (citation omitted).); *see also Arceneaux v. Metro. Life Ins. Co.*, 481 F. App'x 196, 198–99 (5th Cir. 2012) (holding that plaintiff and other employees were not similarly situated because incidents occurred two to three years apart and a change in supervisor occurred during that time).

Buckhanan also fails to demonstrate that Winn is a similarly situated officer because their employment status was not determined by the same person.  *Lee*, 574 F.3d at 260 (citing *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985)).  While Buckhanan's termination was determined by Battle, Winn's reasonable accommodation request was determined by a separate Reasonable Accommodation Committee.  Buckhanan does not point to any evidence demonstrating that she ever submitted a reasonable accommodation request to this Committee.  Buckhanan and Winn's

---

[4] Buckhanan's argument focuses almost entirely on Claude Winn, a male officer who also allegedly failed to qualify for the firearms requirement but was nevertheless granted a reasonable accommodation instead of being terminated.  She briefly makes reference to other male officers who allegedly failed the firearms requirement, but does not express how they were similarly situated to her.  Buckhanan also mentions reasonable accommodations received by Loraine Hudson, but never claims that Hudson (whose gender is unstated) falls outside of her protected class.

employment status was thus determined by different people, and Winn cannot serve as a comparator for Buckhanan.

Buckhanan cannot demonstrate that she was treated less favorably than other similarly situated officers outside of her class.  We therefore agree with the district court's grant of summary judgment in favor of the VA on Buckhanan's gender discrimination claim.

## IV. Conclusion

For the reasons discussed above, the judgment of the district court is REVERSED as to retaliation and AFFIRMED in all other respects.  The case is REMANDED to the district court for further proceedings in accordance with this opinion.

No. 15-60643

GRAVES, Circuit Judge, specially concurring:

I concur in the result reached by my colleagues, but I am unconvinced that the district court's sole abuse of discretion was failing to find "that the August 16 meeting between Buckhanan and Battle was a separate, distinct event which did not constitute a compromise offer or negotiation under Rule [of Evidence] 408." Instead, the district court abused its discretion by finding that Rule 408 applied at all.

"By its terms, Rule 408 protects only conduct or statements made in compromise negotiations regarding a claim that was disputed as to validity or amount." *Lyondell Chemical Co. v. Occidental Chemical Corp.*, 608 F.3d 284, 295 (5th Cir. 2010) (quotations omitted). Rule 408 "does not exclude statements made before such a controversy arises, and does not exclude pre-controversy conduct either." 2 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 4:57 (4th ed.).

In *Lyondell Chemical Co.*, this Court grappled with the meaning of "claim" in the Rule 408 context. In that case, we rejected that "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Id.* at 296 (emphasis in the original). Instead, we endorsed a "loose 'transactional' test" requiring that a dispute at least "arise out of the 'same transaction' in order to trigger Rule 408.'" *Id.* at 297. We stated: "Four circuits—including this one—have applied Rule 408 to distinct legal claims arising out of a common event." *Id.*

Here, Buckhanan claims that the VA improperly terminated her when she did not drop her 2010 EEOC claim. Because the present controversy concerns an act of retaliation—the termination—it could not have arisen until Buckhanan was fired in October 2012. The VA admits that it made its settlement offer to Buckhanan before she was terminated. Consequently, Rule

13

No. 15-60643

408 does not apply. Furthermore, Buckhanan's 2010 EEOC claim is unrelated to her 2012 request for a reshoot, which forms the basis of her present retaliation claim. When Buckhanan originally filed her EEOC claim, she could not have anticipated that she would need to have a firearm qualification retest. In fact, Buckhanan was fully qualified with her firearm when she filed her EEOC claim.

For the reasons stated above, the district court erred in finding that Rule 408 was applicable to the present controversy.